```
          IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF OKLAHOMA

JERRY PHILLIPS,                      )
                                     )
              Plaintiff,             )
                                     )
                                     )  Case No. CIV-20-224-RAW-KEW
                                     )
COMMISSIONER OF THE SOCIAL           )
SECURITY ADMINISTRATION,             )
                                     )
              Defendant.             )
```

## REPORT AND RECOMMENDATION

Plaintiff Jerry Phillips (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts the Commissioner erred because the ALJ incorrectly determined he was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) (citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally, Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also*, *Casias*, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was 57 years old at the time of the ALJ's decision. He has a high school education and past relevant work as a dump truck driver. Claimant alleges an inability to work beginning on December 11, 2017, due to limitations resulting from legal blindness of the right eye, cornea transplant of the right eye, coronary artery bypass graft ("CABG"), heart bypass and stent, uncontrolled diabetes and insulin dependent, high blood pressure, and high cholesterol.

**Procedural History**

On January 26, 2018, Claimant protectively filed his application for a period of disability and disability insurance

benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. His application was denied initially and upon reconsideration. On June 12, 2019, ALJ James Stewart conducted a hearing in Tulsa, Oklahoma, at which Claimant testified. On July 3, 2019, the ALJ entered an unfavorable decision. Claimant requested review by the Appeals Council, and on April 30, 2020, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform medium work with additional limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed reversible legal error by failing to properly evaluate the opinions of state agency medial consultant, Myrna Palasi, M.D.

**Consideration of Opinion Evidence**

In his decision, the ALJ found Claimant suffered from severe impairments of ischemic heart disease post four vessel bypass surgery and multiple stenting, high blood pressure, type II diabetes, obesity, and right eye blindness. (Tr. 14). He determined

4

Claimant could perform medium work, with additional limitations. Claimant could not climb ladders, ropes, or scaffolds. He could occasionally crawl and frequently stoop, crouch, kneel, balance, and climb ramps and stairs. Claimant could have no exposure to unprotected heights, open flames, dangerous machinery or equipment, or other hazardous conditions, no exposure to concentrated levels of fumes, gases, odors, poor ventilation, or other respiratory irritants, and no exposure to concentrated levels of vibration, background noise, heat, or cold. He could not have a job that required accurate depth perception of greater than twenty feet. (Tr. 15-16).

After consultation with a vocational expert ("VE"), the ALJ determined Claimant could perform the representative jobs of janitor, laundry worker, and machinery packager, all of which the ALJ found existed in sufficient numbers in the national economy. As a result, the ALJ concluded Claimant had not been under a disability from December 11, 2017, through the date of the decision. (Tr. 23).

Claimant asserts the ALJ's evaluation of Dr. Palasi's opinions is legally deficient because he failed to address the degree to which Dr. Palasi's opinions – particularly those involving lifting, carrying, standing, and walking – were consistent with the evidence as a whole. He asserts that the ALJ's evaluation of Dr. Palasi's opinions focused exclusively on

Claimant's left foot lesion, and he failed to acknowledge that her opinion was also based on restrictions associated with Claimant's uncontrolled hypertension, type II diabetes, coronary artery disease and CABG, and obesity.

Because Claimant filed her claims after March 27, 2017, the medical opinion evidence in the case is subject to evaluation pursuant to 20 C.F.R. §§ 404.1520c, 416.920c. Under the revised regulations, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, he must "articulate" in his decision "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record" by considering a list of factors. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors include: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, if the ALJ finds "that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [he] will articulate how [he] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)[.]" 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The ALJ discussed the physical RFC assessment completed by Dr. Palasi on December 3, 2018. Dr. Palasi reviewed Claimant's medical records and determined he could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk with normal breaks for a total of at least two hours in an eight-hour workday, sit with normal breaks for a total of about six hours in an eight-hour workday, and push and/or pull was limited in the lower extremities, specifically the left lower extremity, because of a non-healing wound of the left foot. She explained that Claimant's standing and/or walking was limited to two hours in an eight-hour workday because of the non-healing wound of the left foot, poorly controlled type II diabetes on insulin, uncontrolled hypertension, coronary artery disease (specifically CABG), and obesity.

Regarding postural limitations, Dr. Palasi found Claimant could occasionally climb ramps/stairs and ladders, ropes, and scaffolds. He could occasionally balance, stoop, kneel, crouch, and crawl. She based the postural limitations on Claimant's non-healing wound of the left foot, poorly controlled type II diabetes, obesity, and hypertension. Claimant had no manipulative limitations. Regarding vision, Claimant had limited near acuity, far acuity, depth perception, and field of vision, and he had unlimited accommodation and color vision. Dr. Palasi noted Claimant's vision limitations were attributed to his right eye blindness. He had no communicative limitations, but for environmental limitations, Claimant was to avoid even moderate exposure to hazards including machinery, heights, etc. Dr. Palasi based the environmental limitations on Claimant's blindness of the right eye, type II diabetes on insulin, and a non-healing lesion on his left foot. She noted Claimant was unable to return to his past work as a truck driver. (Tr. 21, 434-42).

The ALJ, however, determined Dr. Palasi's opinion was not persuasive for the following reasons:

> Dr. Palasi's opinion is grounded on a misleading analysis of the evidence and the sedentary residual functional capacity (RFC) assessment is unjustified. Dr. Palasi relies heavily on her diagnosis of diabetes type II with a non-healing wou[n]d in the left foot. The podiatry records cited by Dr. Palasi (Exhibit 3F/33-64) show that the [C]laimant had a large soft skin tag with no inflammation or bleeding, mild pain, and could be removed by outpatient surgery with 2-3 week healing

>    period (with bandages). These records show that the
>    [C]laimant came to his scheduled appointment for
>    excision of the skin tag but told doctors he was not
>    feeling well due to high sugars (diabetes) so the surgery
>    was postponed. Notably, the podiatrist records (Exhibit
>    3F) show sensory testing with no indication of sensory
>    loss in the feet and nothing in these records indicates
>    that the skin tag was a diabetic foot sore. Dr. Palasi's
>    reliance on a minor skin tag that could be easily removed
>    for a sedentary RFC makes her entire analysis totally
>    unpersuasive.

(Tr. 21, 326-84).

Here, the ALJ discussed specific reasons why he found Dr. Palasi's opinion was unsupported and inconsistent with the evidence. Because he found Dr. Palasi's opinion was largely based on Claimant's "wound" to his left foot, which Dr. Palasi attributed to his diabetes, the ALJ determined the entire opinion was unpersuasive. Moreover, the ALJ noted that there was "no support for the [C]laimant's claim that doctors told him at his scheduled excision or subsequently that he should not have minor surgery to remove a skin tag because of his diabetes." The ALJ concluded that even with the skin tag, Claimant could perform medium work. He further discussed Claimant's history of heart bypass surgery, noting records showed Claimant's heart condition was fully stabilized and that he also performed his past work for many years after his heart surgery. (Tr. 20-22, 470-78, 66-69, 83-86). This Court finds no error with the ALJ's evaluation of Dr. Palasi's opinion.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be AFFIRMED. The parties are herewith given fourteen (14) days from the date of the service of this Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 9th day of September, 2021.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE